IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN L. PERRY,            CASE NO. 2:07-cv-779
                                        CRIM. NO. 2:05-cr-245
      Petitioner,               JUDGE HOLSCHUH
                                        MAGISTRATE JUDGE ABEL

v.

UNITED STATES OF AMERICA,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. 2255. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURAL HISTORY

This action involves petitioner's underlying criminal convictions pursuant to his guilty plea on conspiracy to interfere with interstate commerce by means of robbery, in violation of 18 U.S.C. §1951, and aiding and abetting the use or carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c). Doc. No. 37. Perry was sentenced to 88 months in prison for the robbery and, as required by 18 U.S.C. §924(c), to a consecutive term of 60 months in prison for aiding and abetting the use or carrying of a firearm and in relation to the robbery. Petitioner filed a timely appeal; however, on November 30, 2007, his appeal was dismissed at his request. Doc. No. 49.

In this federal habeas corpus petition, petitioner asserts the following claims:

1. Ineffective assistance of counsel.

2. Plea agreement obtained by misrepresentation and violation of due process.

3. Accepting of responsibility.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

**CLAIMS ONE AND TWO**

In claim one, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to advise him of a plea offer whereby he would serve five years incarceration and instead permitted petitioner to plead guilty and be sentenced to 148 months. Petitioner also asserts, in claims one and two, that his guilty plea was not knowing, intelligent or voluntary because he was not advised of the nature of the charges against him and because he understood that his sentence of sixty months on count two would run concurrently, rather than consecutively, to his sentence of 88 months on count one. Additionally, petitioner asserts that there was an insufficient factual basis for his guilty plea on aiding and abetting the use or carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c) under *Bailey v. United States*, 516 U.S. 137 (1995). All of the foregoing claims are plainly meritless in view of the record before this Court.

Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered into knowingly and voluntarily in order to be

constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988)(quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In applying this standard, the court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976).

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The two part test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

3

Petitioner pleaded guilty pursuant to the terms of his negotiated plea agreement in which he indicated that he understood he faced a maximum of twenty years on count one and would be sentenced to a mandatory consecutive five year term on count two. *Transcript, Guilty Plea, January 10, 2006*, at 2-3. Petitioner further indicated that he understood that the United States Sentencing Guidelines were advisory only and that the Court had the authority to impose any sentence within the statutory maximum for his offenses of conviction. In view of the foregoing, petitioner's allegation that he thought he would receive a lesser sentence is disingenuous. The plea agreement further indicated:

> Any estimate of a probable sentencing range he may have received or will receive... is a prediction and not a promise and is not binding...
>
> The United States has made no specific promise or representations during sentencing of what sentence [petitioner] will receive. He understand that he cannot withdraw his guilty plea based upon the actual sentence imposed by the Court.

*Id.*, at 6. The parties, however, agreed petitioner had accepted responsibility for his offenses of conviction and if he continued to do so, the United States would file a motion under U.S.S.G. §3E1.1(b). Petitioner received a two level reduction in his recommended sentence under the United States Sentencing Guidelines for his acceptance of responsibility under U.S.S.G. §3E1.1(a). *PreSentence Investigation Report*, ¶43. The prosecutor agreed that if petitioner provided substantial assistance to the government, the government may file

a motion for downward departure from the recommended sentence under the United States Sentencing Guidelines. *Transcript, Guilty Plea, January 10, 2006*, at 7. At the time of his guilty plea, petitioner stated that he understood the charges against him. *Id.*, at 8. He denied being under the influence of drugs or alcohol. *Id.*, at 9. He had ample opportunity to discuss his case with his attorney and was fully satisfied with defense counsel. *Id.*, at 10-11. The Court advised petitioner of all of the rights he was waiving by virtue of his guilty plea. Petitioner at all times indicated that he understood. He asked no questions. *Id.*, at 11-13. Petitioner had reviewed the plea agreement with his attorney. He agreed with its terms as stated above and as recited on the record by the prosecutor. *Id.*, at 14. No one had threatened petitioner or forced him to plead guilty. *Id*. No one had predicted or promised what sentence the Court would impose. *Id.* The Court further advised petitioner that, whatever sentence he received "even if it is more sever than you might anticipate, you would not be able to withdraw your guilty plea based upon that." *Id.*, at 16. Again, petitioner indicated that he understood. *Id.* The Court advised petitioner of the elements of the offenses against him. *Id.*, at 16-19.

The prosecutor summarized the facts of the case as follows:

> [O]n December 28th of 2004, the defendant Johnny Perry met with Rondale Sullivan and Lonnell Sullivan and two or three other individuals to plan and arrange the commission of an armed robbery. On that date, Mr. Perry drove – after the discussions – Mr. Perry drove Lonnell Sullivan and Rondale Sullivan to a parking lot of a Kroger Store at 83 North Hamilton Road located in Gahanna, Ohio, which is within the Southern District of Ohio. The other individuals drove in a separate vehicle.

> One of the Sullivans was then handed a black semiautomatic pistol from one of the other individuals prior to the trip to the Kroger Store in Gahanna. Once all of the participants got there, some of the other individuals did what was called a scout of the Kroger store, they went into the store and made sure that there weren't a whole lot of people in there and then called Mr. Perry to give him the signal to go ahead. At that time Lonnell Sullivan and Rondale Sullivan actually went into the Kroger store, entered the cash room and removed approximately $13, 458 in United States currency from the people inside the cash room at the Kroger store. After exiting the store, the two Sullivans, once again, got into the vehicle driven by Mr. Perry. They all then left the area and rejoined the other individuals and split the money. Mr. Perry received a somewhat smaller portion of the proceeds because he didn't actually go into the store.
>
> The Kroger business is a regional retail grocery business that operates in interstate commerce. And on the date of this particular robbery, the store was actually closed for a period of time after the robbery while the Gahanna Police officers could, in fact, process the scene and conduct interviews in an attempt to solve this robbery.

*Id.*, at 24-25. Petitioner admitted the truth of the foregoing facts. *Id.*, at 26. Additionally, the PreSentence Investigation Report indicates:

> Julius Alls was interviewed by investigators of the ATF and Columbus Police Department regarding the robbery of the Gahanna Kroger Store. Alls reported that he received a telephone call on December 28, 2004 from Rondale Sullivan, who was just released from jail. Alls stated that Sullivan and a second individual arrived at his house in a Dodge Intrepid. They drove to the Kroger Store and arrived a little after 9:00 p.m. Alls was aware that Rondale Sullivan was armed with a 9 mm pistol. According to Alls, Sullivan and the second individual went inside the store around 9:20 p.m. They went directly to the customer service area, and Sullivan jumped over a counter while brandishing a firearm. He made entry into the back room where two employees were counting money. Alls

stated that Sullivan demanded that one of the employees place the money into a bag which he pulled from his back pocket. He instructed the employee to only give him $10's, $20's, $50's, and $100's in which she cooperated. The two left the store and entered the car driven by Julius Alls. Alls stated that they met at Rondale Sullivan's apartment after the robbery to split the money.

... Mr. Perry admitted [to ATF agents] participating in the robbery of the Kroger store in Gahana, Ohio. According to Perry, he was at Mark Allen's home with Lonnell Sullivan, Rondale Sullivan, Julius Alls and Kevin LNU, later determined to be Kevin Daniels. They were discussing robberies and trying to determine a good target. Mr. Perry mentioned that he had observed cash on the counter in the office at the Kroger store and recalled that it would be easy access to obtain it.... Perry stated he drove Lonnell Sullivan and Rondale Sullivan in his vehicle.

\*\*\*

After the robbery, the six individuals went back to Mark Allen's home. They counted the money and split it equally between them.

*PreSentence Investigation Report,* at ¶¶ 18-21. At the time of his guilty plea, the following exchange took place in regard to use of the firearm in the offense:

> [Court]: [W]ho had the pistol?
>
> Defendant: I am not really sure which one had it, Your Honor, but one of them had the gun and one had a pillowcase. But I'm not really sure who had what as far as Lonnell and Rondale, I'm not sure who had what. I know one had a pistol and one had a pillowcase...
>
> \*\*\*
>
> Court: ... The purpose of the pillowcase was to put the money in; is that right?

> Defendant: Yes, sir.
>
> Court: And the other one had the pistol?
>
> Defendant: Yes.
>
> Court: A black semiautomatic pistol?
>
> Defendant: Yes.
>
> Court: And you knew that they had that pistol?
>
> Defendant: Yes, sir.
>
> Court: And you knew that they were going to take that into the store during the commission of the robbery?
>
> Defendant: Yes, sir.

*Id.*, at 25-26. Defense counsel had advised petitioner regarding the charge of aiding and abetting the use or carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c) and it was his

> considered opinion, as well as Mr. Perry's decision, that there would be sufficient evidence with respect to this firearm for him to have to face the very high likelihood of being convicted on that charge.
>
> We discussed this. It is something that is a continuing point rather than something that has just been arrived upon at the last moment because there are other robberies and Mr. Perry might have felt some pressure to cooperate.

*Id.*, at 27-28.

> Court: How did it happen, Mr. Perry, that one of the Sullivans had Mark Allen's pistol?
>
> Defendant: Well, at the time ... me and Mark Allen and a

8

> couple of other guys, we all met at Mark's house and a discussion came up about the Kroger's, okay? Mark said, well, which one of you all, you know, is going to go in? And he said, here's the gun. Figure it out and take it in and get the money when we get there.
>
> Court: You were a part of that discussion?
>
> Defendant: Yes, sir.
>
> Court: You saw that?
>
> Defendant: Yes. We was at Mark's house at the time.
>
> Court: So, you knew it would be used in the robbery by one of the Sullivan boys?
>
> Defendant: Yes, sir.

*Id.*, at 29.

In view of all of the foregoing, and contrary to petitioner Perry's allegation here, the record reflects that petitioner was advised of the nature of all of the charges against him, and of the potential sentence that he faced. The record is devoid of any support for his allegation that the government offered a plea bargain whereby he would serve only five years. In any event, inaccurate predictions by counsel would not render a guilty plea invalid or constitute ineffective assistance where, as here, the District Court accurately advised petitioner of sentencing ramifications and of all of the rights that he is waiving by virtue of his guilty plea.

> It has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty

9

plea on grounds of ineffective assistance of counsel. *See Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir.1972) (citing *Wellnitz v. Page,* 420 F.2d 935 (10th Cir.1970)); *see also United States v. Marzgliano,* 588 F.2d 395, 399 n. 6 (3d Cir.1978) (explaining different rule where allegation is that plea was based on misconduct or misrepresentation by defense counsel); *United States v. Valenciano,* 495 F.2d 585, 588 (3d Cir.1974) (same). This rule has been reinforced with the advent of Guideline sentencing and the detailed procedures to be followed in conducting the Rule 11 colloquy at the guilty plea hearing. *See, e.g., United States v. Stephens,* 906 F.2d 251, 253 (6th Cir.1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.... This is especially true under the new Sentencing Guidelines.") (quoting *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) ("[The Sentencing Guidelines] reinforce our earlier decisions on the issue. Under the Guidelines there will be many more detailed hearings regarding imposition of sentence.").

The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel. *See, e.g., United States v. Martinez,* 169 F.3d 1049, 1053 (7th Cir.1999) ("[A]n attorney's mere inaccurate prediction of sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (citation omitted); *Gonzalez v. United States,* 33 F.3d 1047, 1051-53 (9th Cir.1994) ("The district court informed [defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him. As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective

> assistance of counsel .... Further, [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court.") (citation omitted).

*Brown v. United States,* 75 F.Supp.2d 345, 355 (D. New Jersey, 1999).

Pursuant to the terms of his negotiated guilty plea, petitioner obtained a two level reduction in his recommended guidelines sentence for acceptance of responsibility, and a one level reduction for timely notifying authorities of his intention to plead guilty. *PreSentence Investigation Report*, at ¶¶43, 44. The Court granted the government's motion for reduction of petitioner's sentence pursuant to U.S.S.G. §5K1 which resulted in substantial reduction of petitioner's sentence. Petitioner's recommended guideline sentencing range had been 262 to 327 months incarceration. *See PreSentence Investigation Report*. The probation officer had recommended a sentence of 262 months; however, as a result of his guilty plea and pursuant to the government's motion, the Court sentenced petitioner to well below such recommendation, to 148 months. Further, the government agreed not to pursue additional charges against petitioner and, in fact, did not pursue additional criminal charges against petitioner although he admitted purchasing a firearm for his girlfriend while he was released on bond. *See* Doc. No. 33.[1] Finally, the record does not reflect that the prosecutor would have been unable to establish the charges against petitioner. For all of the foregoing reasons, petitioner's claim that his guilty plea was not

---

[1] The government indicated in its motion for downward departure under U.S.S.G. §5K1.1 that it would have requested an even greater reduction in petitioner's sentence but for his participation in the purchase of a firearm while he was released on bond. *See* Doc. No. 33.

knowing, intelligent or voluntary, and that he was denied the effective assistance of counsel are without merit.

Petitioner's claim that the record fails to reflect a factual basis for his guilty plea on his conviction on use or carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c), should have been raised on direct appeal, but was not. This claim, therefore, has been waived absent a showing of cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Petitioner has failed to establish cause and prejudice for his failure to raise such claim on direct appeal.

Federal Rule of Criminal Procedure 11(b)(3) provides:

> Determining the Factual Basis for a Plea. Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

The elements necessary to satisfy petitioner's charge on aiding and abetting the use or carrying of a firearm during and in relation to a crime of violence under 18 U.S.C. §924(c) are as follows:

> [T]he defendant (1) must use or carry a firearm (2) during or in relation to a crime of violence or drug trafficking crime. *Smith v. United States*, 508 U.S. 223, 227-28 (1993); *Mitchell,* 104 F.3d at 652. "To be found guilty of aiding and abetting, the defendant must, 'in some sort associate himself with the venture, that he participate in it as in something he wishes to bring about, that he seek by his action to make it succeed." ' *United States v. Price,* 134 F.3d 340, 350 (6th Cir.1990) (quoting *United States v. Bryant,* 461 F.2d 912, 919-20 (6th Cir.1972)).

> "Thus, it has been said that aiding and abetting involves (1) an act by a defendant which contributes to the execution of a crime; and (2) the intent to aid in its commission." *United States v. Lowery,* 60 F.3d 1199, 1202 (6th Cir.1995). "The defendant must act or fail to act with the specific intent to facilitate the commission of a crime by another." *Bryant,* 461 F .2d at 920.

*United States v. Xiong*, 173 F.3d 857, unpublished, 1999 WL 183353 (6th Cir. March 16, 1999). Use of a firearm within the meaning of 924(c) means active employment of the firearm – *i.e.*, a use that makes the firearm an operative factor in relation to the predicate offense. *Bailey v. United States, supra*, 516 U.S. at 143.

Here, petitioner knew that his co-conspirators had a firearm with them that they intended to use to facilitate the robbery when he dropped them off at the intended robbery site. Sullivan brandished the firearm while demanding money from Kroger employees. *See PreSentence Investigation Report*, at ¶18. Petitioner assisted in the planning of the robbery and participated in the distribution of its proceeds. *See id.* Additionally, defense counsel indicated at the time of petitioner's guilty plea that he had discussed with petitioner the firearm charge and the evidence against petitioner, and that it had been petitioner's counseled decision that it was in his best interest to plead guilty. In short, petitioner has failed to establish the ineffective assistance of counsel as cause for his failure to raise on direct appeal a claim that there was an insufficient factual basis for his guilty plea. *See Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991)(ineffective assistance of counsel may constitute cause for a procedural default).

Claims one and two are without merit.

## CLAIM THREE

In claim three, petitioner asserts that he should have received a reduction in his recommended guideline sentence for his acceptance of responsibility. This claim fails to warrant federal habeas corpus relief.

To obtain relief under §2255, a prisoner must establish that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell,* 428 U.S. 465, 477 n. 10 (1976).

To prevail on a §2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Watson v. United States,* 165 F.3d 486, 488 (6th Cir.1999) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993)).

> [T]he petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Watson,* 165 F.3d at 488 (quoting *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir.1990)) (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *accord Grant v. United States,* 72 F.3d 503, 506 (6th Cir.), *cert. denied,* 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996).

*McNeil v. United States,* 72 F.Supp.2d 801, 803 (N.D.Ohio 1999). Petitioner cannot meet this

burden here.

> [N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system. Hence, when a federal statute, but not the Constitution, is the basis for postconviction attack, collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process. *Reed,* 512 U.S. at ----, 114 S.Ct. at 2300.
>
> Accordingly, nonconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal. If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what really is being asserted is a violation of due process. Thus, as a practical matter, collateral relief does exist to vindicate rights of constitutional import that may lurk beneath otherwise garden-variety issues of statutory rights or guideline calculations.

*Grant v. United States, supra,* 72 F.3d at 506. Additionally, as discussed above, and contrary to petitioner's allegations, the record indicates that Perry received a three level reduction in his recommended sentence under the United States Sentencing Guidelines pursuant to 18 U.S.C.A. §3E 1.1(a), (b), based on his acceptance of responsibility. *See PreSentence Investigation Report,* at ¶¶ 43, 44 in addition to obtaining a substantial downward departure

from his recommended guideline sentence pursuant to the government's motion under U.S.S.G. §5K1.1. *See* Doc. No. 33.

Claim three is without merit.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel  
United States Magistrate Judge